# Exhibit 9

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE**

AMBER SHERMAN, RACHAEL SPRIGGS, KERMIT MOORE, BLACK CLERGY COLLABORATIVE OF MEMPHIS, MEMPHIS A. PHILIP RANDOLPH INSTITUTE, THE EQUITY ALLIANCE,

       *Plaintiffs*,

    *v.*

TRE HARGETT, in his official capacity as Secretary of State of Tennessee, MARK GOINS, in his official capacity as Coordinator of Elections for Tennessee, STATE ELECTION COMMISSION, and DONNA BARRETT, JUDY BLACKBURN, JIMMY ELDRIDGE, MIKE MCDONALD, SECONDRA MEADOWS, VANECIA BELSER KIMBROW, and KENT YOUNCE, in their official capacities as members of the State Election Commission,

       *Defendants.*

Civil Action No 26 Civ. 616

## DECLARATION OF LUCAS CAMERON-VAUGHN

I, Lucas Cameron-Vaughn, declare, pursuant to 28 U.S.C. § 1746, as follows:

1. My name is Lucas Cameron-Vaughn. I am over 18 years of age and competent to make this declaration.

2. I am an attorney at law duly licensed to practice before the United States District Court for the Middle District of Tennessee.

3. I am an attorney for Plaintiffs Amber Sherman, Rachael Spriggs, Kermit Moore, the Black Clergy Collaborative of Memphis, Memphis A. Philip Randolph Institute and The Equity Alliance.

2

4.      Attached hereto as Exhibit A is a true and correct copy of the Declaration of Beth Henry Robertson, submitted in *Moore v. Lee*, No. 22-0287-IV (Tenn. Ch. Ct. Davidson Cnty. Mar. 22, 2022).

5.      Attached hereto as Exhibit B is a true and correct copy of the Declaration of Linda Phillips, submitted in *Moore v. Lee*, No. 22-0287-IV (Tenn. Ch. Ct. Davidson Cnty. Mar. 21, 2022).

6.      Attached hereto as Exhibit C is a true and correct copy of the Declaration of Chris Davis, submitted in *Moore v. Lee*, No. 22-0287-IV (Tenn. Ch. Ct. Davidson Cnty. Mar. 22, 2022).

7.      Attached hereto as Exhibit D is a true and correct copy of the Declaration of Tammy Smith, submitted in *Moore v. Lee*, No. 22-0287-IV (Tenn. Ch. Ct. Davidson Cnty. Mar. 22, 2022).


I declare under penalty of perjury that to the best of my knowledge the foregoing is true and correct.

Executed on May 13, 2026

/s/ Lucas Cameron-Vaughn
Lucas Cameron-Vaughn

# Exhibit A to Cameron-Vaughn Decl.

E-FILED
3/25/2022 8:17 PM
CLERK & MASTER
DAVIDSON CO. CHANCERY CT.



EXHIBIT
5

## IN THE CHANCERY COURT OF DAVIDSON COUNTY, TENNESSEE
### AT NASHVILLE

| | |
|---|---|
| AKILAH MOORE, TELISE TURNER, and GARY WYGANT, <br><br> Plaintiffs, <br><br> v. <br><br> BILL LEE, Governor, TRE HARGETT, Secretary of State, and MARK GOINS, Tennessee Coordinator of Elections, all in their official capacity only, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

No. 22-0287-IV

---

### AFFIDAVIT OF BETH HENRY ROBERTSON

---

State of Tennessee )
County of Davidson )

I, Beth Henry Robertson, being first duly sworn, depose and say:

1. I am over 18 years of age, legally competent to give this affidavit and have personal knowledge of the facts set forth in this affidavit.

2. I am the Assistant Coordinator of Elections for the State of Tennessee and have held this position since 1995. I am also a license attorney and have been licensed in Tennessee since 1995.

3. The Coordinator of Elections is appointed by the Tennessee Secretary of State, and by law, is to be the chief administrative election officer of the State. Tenn. Code Ann. § 2-11-201(b). A number of the Coordinator's statutory duties, in addition to the execution of all elections in the State, are set forth in Tenn. Code Ann. § 2-11-202. Currently, the State Election Office is staffed with eight (8) full-time employees.

4. The State of Tennessee has a population of approximately 6,910,840, with approximately 4,466,813 registered voters. The State has 95 counties, and each county has a five-member county election commission. The county election commission appoints an Administrator of Elections who is the chief administrative officer for the election commission and is responsible for conducting elections in that county. To the best of my knowledge, eleven (11) of our 95 counties have only one (1) full-time employee in their election commission office. Additionally, the election commission office in four (4) counties is open less than five full days a week.

5. There are three major elections held every two years in each of the 95 counties in Tennessee: (1) the County Primary Elections, which are held on the first Tuesday in May, except in Presidential election years, when they are held at the same time as the Presidential Preference Primary on the first Tuesday in March; (2) the County General Election, the State and Federal Primary Elections, and possibly State General Elections for judicial offices, which are held on the first Thursday in August; and, (3) the State and Federal General Election which is held on the first Tuesday after the first Monday in November. The ballot for the August election is generally the largest and most complicated ballot since it includes offices for the County General Election, the State and Federal Primary Election, as well as the State General Election for any judicial offices on the ballot. The August 2022 ballot will include the following offices:

**Federal and State Primary Ballot Offices**
Governor;

2

United States House of Representatives;
Tennessee Senate (Odd Numbered Districts);
Tennessee House of Representatives;
Tennessee Republican State Executive Committeeman;
Tennessee Republican State Executive Committeewoman;
Tennessee Democratic State Executive Committeeman;
Tennessee Democratic State Executive Committeewoman

**State and County General Offices**
Supreme Court Judge (Retention Question);
Court of Appeals Judge (Retention Question);
Court of Criminal Appeals Judge (Retention Question);
Circuit Court Judge;
Chancellor;
Criminal Court Judge;
Probate Judge (Some Counties)
District Attorney General;
Public Defender;
County Mayors;
County Commissions;
Assessor of Property (Some Counties);
County Trustee;
General Sessions Judge;
Juvenile Court Judge;
Sheriff;
Clerks of Courts;
County Clerk;
Register;
Road Superintendents;
School Boards;
Municipal Executive Offices (Some Counties);
Municipal Legislative Offices (Some Counties);
Municipal Judicial Offices (Some Counties)

6.　　The deadline for candidates to qualify for the State and Federal Primary Election in August is noon on the first Thursday in April. Tenn. Code Ann. § 2-5-101(a)(1). For this year, that deadline is April 7, 2022. It is my understanding that the Plaintiffs are seeking to have that deadline postponed to May 20, 2022.

7.　　With the April 7 qualifying deadline, county election commissions cannot begin to prepare the August ballot until April 21. Under Tenn. Code Ann. § 2-5-204(b), qualified candidates

have seven days to withdraw from the ballot. During the same time period, the state executive committee for each political party may disqualify primary candidates as not being bona fide members of the party. The deadline for the withdrawal and the disqualification of primary candidates falls on 12:00 noon on April 14. However, the appeal by the disqualified candidate and review process of the state executive committee are not finalized until seven days after the withdrawal deadline, which falls on April 21. Under the Military and Overseas Voters Empowerment Act ("MOVE"), 42 U.S.C. §1973ff-1(8), and Tenn. Code Ann. § 2-6-503(a), county election commissions must send ballots to military personnel and overseas citizens no later than forty-five (45) days before the election. With the current statutory deadlines already mentioned, there are approximately forty-one (41) business days between the time ballots can be prepared and the deadline on which ballots for military personnel and overseas citizens must be mailed out. If the qualifying deadline moves to May 20, the withdrawal deadline moves to May 27 and the political party disqualification process deadline falls on June 3. This postponed schedule gives county election commissions only about 17 days to prepare, review and send ballots to military personnel and overseas citizens.

8.     For the August 2022 election, each county must prepare a ballot for each primary and for each type of system they use, e.g., paper ballots for absentee voting, paper ballots for optical scan voting systems, and machine ballots for Direct Recording Electronic ("DRE") voting systems to be used on Election Day and early voting. Thus, for the August election each county has to prepare at least five (5) different types of ballots: paper ballot for the Republican Primary; paper ballot for the Democratic primary; paper ballot for the August general; for DRE counties a machine ballot for the Republican Primary and a machine ballot for the Democratic Primary

4

9. Tenn. Code Ann. § 2-5-207(e) provides that once a county has prepared their ballots, a sample ballot is to be sent to our Office for review and approval. This statute specifically provides that no ballot shall be printed, or funds expended therefor by any county until such approval has been granted. When the ballots come to our Office for approval, we have one employee who conducts the initial review of each ballot and then each ballot is double-checked by another employee. Given the number of offices on the ballot, this process will take a substantial amount of time. As noted, for the August election, each county will have to prepare at least five (5) ballots which means that our Office will have to review at least 475 ballots (5 ballots x 95 counties). If there are any municipal elections being held at the same time as the August election, the counties will also have to prepare and we will have to review those ballots, as well. This review and approval process must be completed to prepare the absentee by-mail ballots used for military personnel and overseas citizens. A qualifying deadline of May 20 allowing only about 17 days to review and approve at least 475 ballots by our Office is simply not feasible.

10. Of course, before any of the ballots can be developed, printed, and prepared for mailing to military voters, it must be determined which candidates have qualified, and if necessary, if any political parties have qualified to be a recognized minor party by submitting petitions with the requisite number of valid signatures. This determination requires the State and counties to go through the process of verifying signatures on the petitions. Since voters' permanent registration cards are maintained at the local (county) level, our Office does not do the actual verification of signatures. Instead, we review the petitions, separate out the signature pages by county and then forward them to the appropriate county election offices where the actual verification is conducted by those offices. In verifying signatures, the counties are required to follow the provisions of Tenn. Code Ann. § 2-1-107. Once the counties have finished reviewing and verifying signatures,

5

they report back the total number of valid signatures and then we determine whether a person has collected enough valid signatures to qualify as a candidate on the August ballot. For U.S. House of Representatives, candidates file the nominating petition with our Office and for Tennessee Senate and House of Representatives, candidates file the nominating petition in the counties. The original petition is filed in the county where the candidate resides, and certified duplicates are filed in each county that is a part of the legislative district.

11. Since February 7, 2022, the first day petitions for the federal and state primary election petitions could be issued, county election commissions have reviewed and changed voting precinct lines based upon the redistricting bill passed by the Tennessee 112th General Assembly. Relying on these district lines, county election commissions have adjusted voting precinct lines and moved street names and voters into legislative districts in accordance with the new district lines. For the district-based offices of U. S. House of Representatives, Tennessee Senate, Tennessee House of Representatives, Tennessee Republican State Executive Committeeman, Tennessee Republican State Executive Committeewoman, Tennessee Democratic State Executive Committeeman, and Tennessee Democratic State Executive Committeewoman, the county election commission, candidates, and voters have relied upon the adoption of these lines to determine whether voter signatures are valid on nominating petitions for the offices that have already been filed.

12. Furthermore, once the county election commissions have established their new precincts and polling places, they are required pursuant to Tenn. Code Ann. § 2-3-105 to immediately publish the new precincts or districts in a newspaper of general circulation in the county and mail to each active voter whose polling place has changed a notice of the voter's new

6

polling place and precinct number. Many of the county election commissions have already sent out these notices to their active voters and/or published this information.

13. This Office (and the county election offices) have many other tasks and duties that we have to perform during this same time period that we are doing what is necessary to get the military ballots ready and sent out. For example, we have to set up an electronic database of the state and federal candidates to assure that the names of the candidates who do qualify and the names of their offices appear the same in each county. This database is necessary in order for us to be able to ensure that the way candidates and offices are listed is consistent, particularly in multi-county districts. The database is also necessary for us to use to approve the ballots when the counties send them in.

14. This Office also spends a considerable amount of time preparing for and training election officials. Tenn. Code Ann. § 2-11-202(a)(9) requires the Coordinator of Elections to provide materials for and conduct training programs for persons administering the election laws. Subsection (18)(A) further requires the Coordinator of Elections to conduct a training seminar for administrators, deputies, and county election commissioners at least once a year. Certified Administrators of Elections must take the time to participate in the annual training provided by the Coordinator of Elections to maintain their certified status. The Coordinator of Elections and members of the Election Division must take time to prepare for and assist in the training for the certified Administrators of Elections. This is done in addition to the daily tasks of responding to phone calls and emails from election officials, voters, candidates, and members of the public.

15. Tenn. Code Ann. § 2-11-202(b) requires the Coordinator of Elections and the State Election Commission to prepare and administer a written examination on election laws at least once a calendar year to any county election administrator seeking certification. I conduct training

7

for new county Administrators of Election who have not taken the state examination. Thus, during this same time period, I am quite busy responding to inquiries (both phone calls and emails) from new Administrators, conducting group study sessions for Administrators sitting for the exam and administering two (2) mock exams for the Administrators sitting for the certification examination. I write the certification exam, the Coordinator of Elections reviews and approves the certification exam, and I, along with other members of the Elections Division, administer and grade the certification exam. This is done in addition to the daily tasks of responding to phone calls and emails from election officials, voters, candidates, and members of the public.

16. The Coordinator of Elections is also required by law to review all bills affecting the election laws and report in writing to the General Assembly on them individually, as well as report to the General Assembly any recommendations for improvements in the election laws or their application. Tenn. Code Ann. §§ 2-11-202(10) and (11). The legislative session for the General Assembly usually runs from the middle of January to the end of April. Thus, particularly during these months, the Coordinator of Elections, Mark Goins, spends a considerable amount of time reviewing and reporting on election related bills. In addition, anytime an election related bill is being heard in a committee or sub-committee hearing, he has to attend that hearing either in order to testify or to answer questions regarding the proposed legislation. This means that he usually spends at least 2-3 days a week in addressing election legislation.

17. Additionally, our Office is also charged with administering and implementing the provisions of the Help American Vote Act ("HAVA"). Among other things, HAVA requires that each state maintain a statewide voter registration database. This database is maintained by our Office. However, voter registrations and purges are all handled at the local (county) level. Thus, in order for us to maintain our statewide voter registration database, each county has to transmit to

8

us on a daily basis voter registration and purge information so that we can update the database. In addition, we receive information on a regular basis from the State Department of Vital Records concerning deaths of registered voters, as well as information from the federal courts of the convictions of registered voters (counties receive this information from the state courts). These voters have to be purged both from the statewide database and from the local county election office's permanent voter registration records. Additionally, the counties are required to purge the registration of any voter who meets the provisions of Tenn. Code Ann. § 2-2-106, however state law further requires that the counties shall not purge any permanent registration records ninety (90) days before an election. Consequently, we have two staff members working with the counties and assisting in these list maintenance procedures.

18. Further, while the voter registration records of convicted felons are purged upon conviction, state law provides a process for a convicted felon to have his/her voting rights restored. *See* Tenn. Code Ann. §§ 2-2-139 and 40-29-203(d). This process requires that before a county administrator allows a convicted felon to become a registered voter, the administrator must verify with this Office that the person has had their voting rights restored and is eligible to register to vote. Our Office has one employee primarily responsible for dealing with issues involving the restoration of voting rights of convicted felons. That employee spends a considerable amount of time during the period leading up to elections responding to inquiries from county administrators, convicted felons seeking to have their voting rights restored, and those officials who have the authority to complete the certificate of restoration form.

19. We have 74 counties holding a county primary on May 3, 2022. Thus, in the months and days leading up to that date, we will be assisting the counties in conducting that election, and in the days and weeks after the election, we will be busy receiving and compiling the

9

certification of election results from the counties, as well as receiving and compiling voter histories from the counties. State law requires that counties must certify their election results by the third Monday after the election, however, most counties try to get their results certified as soon as possible so that they can begin preparing their ballot for the August County General Election.

20. Finally, state law requires that each county provide to our Office a report containing the following information by precinct every six (6) months: beginning and ending numbers for the reporting period of active and inactive voters, new valid voter registrations and purged voters. The report also must include the number of registrations received during the reporting period from the following categories: (1) registered in person with Election Office, (2) Department of Safety, (3) By-mail registration, (4) Public Assistance agencies, (5) state-funded agencies, (6) armed forces recruitment offices, and (7) passive voter registration agencies. Finally, this report must include all duplicate applications received and the number of confirmation notices mailed out and the number of responses received. Tenn. Code Ann. § 2-12-114. The county election commissions are required to file this report with our Office by June 1. Once we receive the reports, we then have to review them and then integrate the information into our database. We then generate a report that is placed on our website.

21. As I have previously stated, based upon my experience, we need the time between the qualifying deadline (April 7) and the deadline mandated by the MOVE Act (June 20) in order for our counties to get their ballots prepared and sent out to our military voters. If the April 7 candidate qualifying deadline were moved to May 20 (or any other date later in the election cycle), we would not be able to comply with the MOVE Act and it would be very difficult for us to have

10

everything timely and accurately ready for the August election and early voting.

FURTHER AFFIANT SAITH NOT.

_____
BETH HENRY-ROBERTSON

Sworn to and subscribed before me this 22nd day of _March_, 2022.

_____
NOTARY PUBLIC

My Commission expires: 1-8-2024

11

# Exhibit B to Cameron-Vaughn Decl.



## IN THE CHANCERY COURT OF TENNESSEE
## FOR THE TWENTIETH JUDICIAL DISTRICT

AKILAH MOORE, TELISE TURNER, and GARY
WYGANT,

Plaintiffs,

v.

WILLIAM LEE, as Governor of Tennessee, in his
official capacity; TRE HARGETT, as Tennessee
Secretary of State, in his official capacity; and
MARK GOINS, as Tennessee Coordinator of
Elections, in his official capacity,

Defendants.

CASE NO. 22-0287-IV

Chancellor Perkins
Chancellor Maroney
Judge Sharp

## AFFIDAVIT OF LINDA PHILLIPS

State of Tennessee
County of Shelby

I, Linda Phillips, do hereby state as follows under penalty of perjury:

1. I am the Administrator of Elections for Shelby County, Tennessee. I have held this position since May 2016. I am over the age of eighteen years, and I am competent to testify in the matters set forth herein.

2. I am appointed by the Shelby County Election Commission and am the chief administrative officer of the Commission responsible for the daily operations of the Office and the execution of all elections in Shelby County. Many of my statutory duties are set forth in Tenn. Code Ann. § 2-12-201. The Shelby County Election Commission has 17 full-time and 42 part-time employees.

3. Shelby County is the largest county in Tennessee with a population of approximately 929,744 persons of which approximately 581,282 are registered voters.

4. The cities of Arlington, Bartlett, Collierville, Germantown, Lakeland, Memphis, and

Millington are located within Shelby County. The City of Memphis is the second largest city in the State with a population of approximately 651,073 persons including approximately 369,574 registered voters.

5. There are three major elections held every two years in each of the 95 counties in Tennessee, not including municipal or special elections. During non-presidential election years, the County Primary Election is held on the first Tuesday in May, which this year is May 3, 2022. Next is the County General and State and Federal Primary Elections held on the first Thursday in August, currently scheduled for August 4, 2022. Finally, there is the State and Federal General Election held on the first Tuesday after the first Monday in November and is scheduled for November 8, 2022.

6. The ballot for the August elections is generally the largest and most complicated ballot because it includes offices for the County General as well as the State and Federal Primary elections. This year, the offices for all trial court judges, appellate court judges, and the District Attorney General are also included on the August ballot. Also, the City of Arlington holds its regular municipal elections during the August election. Finally, the cities of Collierville, Germantown, and Millington are all holding city judicial elections, and the City of Memphis is holding a special city judicial election all of which are included on the August 2022 ballot.

7. Federal laws, including the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA") as amended by the Military and Overseas Voter Empowerment Act ("MOVEA") require my office to mail overseas and military ballots out no later than forty-five (45) days before a federal election, including federal primary elections. The deadline to mail out the overseas ballots for the August 2022 Primary and General elections is June 20, 2022.

8. Overseas and military ballot requests are received by the Shelby County Election Commission long before the ballots have been finalized and printed and we begin processing them

2

as we receive them.

9. It takes our Office approximately one week to prepare all the UOCAVA ballots for mailing/emailing, but only *after the ballots have been printed*. After the ballots are printed, we prepare the UOCAVA ballots for mailing or emailing to the voters, making sure we update our computer systems to indicate that a ballot has been sent and double checking that the correct ballot style is pulled for each requestor. We then mail or email the ballots to the requestors along with the affidavit, instructions, and in the case of mail, a return envelope. To have sufficient time to mail the UOCAVA ballots by the forty-five (45) days before the election deadline, it is imperative that we prepare the ballots for printing as soon as possible.

10. Pursuant to Tenn. Code Ann. §§ 2-5-204(b)(1) and –(b)(2)(A), before we can begin preparing the ballot, we are required to wait until after the candidate withdrawal deadline, which is 7 days after the qualifying deadline. During the same time period, the state executive committee of each political party may disqualify candidates as not being bona fide members of the party. Further, the delaine to appeal the disqualification for the state executive committee to finalize the review process is 7 days after the withdrawal deadline. For the August 2022 primary, the qualifying deadline is April 7, 2022. The withdrawal and disqualifying deadline are April 14, 2022, and the appeal deadline is April 21, 2022. After the appeal deadline, the Shelby County Election Commission certifies the candidates on the ballot, and only then can we begin preparing our ballots.

11. My understanding is that the Plaintiffs are asking to delay the qualifying deadline to May 20, 2022; however, as addressed below, such a delay would mean that our Office will be unable to mail the UOCAVA ballots by the deadline of June 20, 2022, 45 days before the August 4, 2022, County General and State and Federal Primary elections.

12. If the qualifying deadline is delayed to May 20, 2022, then as addressed above, our Office could not be able to even begin building our ballots until June 3, 2022–two weeks after the delayed

3

withdrawal deadline of noon on May 27, 2022 and the executive committee deadlines of noon on June 3, 2022. In addition, the Election Commission's candidate certification deadline would also be delayed to after noon on June 3, 2022, at the earliest, leaving our Office with about 16 days to build and test the ballots for Shelby County, have them approved by the Coordinator of Elections, seek print bids, request approval for printing from the County Commission, and mail the ballots to the UOCAVA voters. Such a delay would make it impossible to meet the June 20, 2022, UOCAVA mailing deadline.

13. Based on my experience, I expect Shelby County will have over one thousand (1,000) different ballot styles for the August 2022 General and Primary elections and I estimate it will take at least a week to build the ballots and run them through our accuracy checks before sending them to the Tennessee Secretary of State's Coordinator of Elections for review and approval. Approval takes between 2 days and a week depending on whether the Coordinator's Office finds any deficiencies or issues with the ballots that need to be corrected.

14. After State approval, the ballots are then sent to the printer, which raises a separate set of issues and delays. To get the ballots printed in Shelby County, my Office is required to submit a purchase request to the Shelby County Finance Department along with 3 bids from bonded printers. If the cost is over $50,000, we must get Shelby County Commission approval. I estimate that the August ballot will be about 3 pages long and will cost approximately $75,000 to print, requiring County Commission approval; however, based on their schedule, we could not even get on the agenda until after the UOCAVA mailing deadline has passed.

15. The Shelby County Commission is scheduled to meet on June 6, 2022, and to get on that agenda we would have to submit the purchase request by May 20, 2022, which we cannot do because we would not have a final certified candidate list at that time. We would also need to have the 3 bid quotes from the bonded printers to submit the purchase request which, again, cannot be

4

obtained until the ballot is completed. Which means we could not seek printing approval at the June 6, 2022, County Commission Meeting.

16. After June 6, 2022, the County Commission is not scheduled to meet again until June 27, 2022, which is beyond the UOCAVA mailing deadline. So, a delay in the qualifying deadline to May 20, 2022, would result in our Office failing to meet the UOCAVA mailing, potentially disenfranchising overseas and military voters.

17. Delaying the qualifying deadline will also negatively impact the programming of our early voting and election day voting machines for the August elections. Because we can only begin programming the voting machines after the withdrawal and party certification deadlines, the Election Commission candidate certification vote, and the ballots are built and approved, programming the voting machines would be delayed to June 15-17 or later.

18. In Shelby County, we currently do not know whether we will have new voting machines for the August election, or if we will have to utilize our old voting system. With our old system, we need about 1200-1300 voting machines for the August elections, 220 for early voting and programmed with all ballot styles, and the other 1000-1100 for election day and programmed with the ballot styles for each individual precinct in which they will be used. It takes sixteen voting machine technicians approximately 2 weeks to program the machines for early voting and an additional 6 weeks to program the rest. Then they must test them in front of the public.

19. Early voting begins July 15, 2022 and runs through July 30, 2022. In addition to programming and publicly testing the machines, they need to be delivered beforehand to their precincts. Early voting machines will be picked up and delivered on July 8, 2022, and the election day machines on July 26, 2022. If the qualifying deadline is delayed, the ensuing delays in all other deadlines would not give our technicians enough time to program and publicly test the machines before they are scheduled to be delivered to their precincts without hiring an additional 12

5

technicians for four weeks, which I estimate would cost $50,000 in wages and overtime.

20. In addition to running county, state, and federal elections, my Office is also responsible for conducting municipal elections and provide various services for those elections too. For example, when we issue a petition to a candidate, we make sure we give them the right petition for the office in question and certify it as an original petition. Also, candidates are provided a packet containing several documents with explanations of election and campaign financial disclosure laws. Each candidate is briefed by a staff member on all packet contents ensuring they have no unanswered questions.

21. My staff and I also have many other tasks that must be completed during the qualifying/filing and UOCAVA mailing deadlines to prepare for the August elections. For example, beginning March 6, 2022, during the ninety (90) days before the elections, voters who qualify to vote absentee can begin requesting absentee ballots and our Office is required to process the requests using the same procedures for processing UOCAVA absentee ballot requests. Due to lingering COVID-19 concerns, I expect a significant number of voters will vote absentee in the 2022 elections.

22. Other duties that my staff and I are required to complete during this same time period include:

- Recruiting, verifying, hiring, and training approximately 900-1200 poll workers.
- Preparing the list of all qualified candidates and sending it to the Coordinator of Elections.
- Preparing the list of all qualified candidates and transmitting it to the Bureau of Ethics and Campaign Finance within 3 days of the qualifying deadline.
- Notifying candidates of all campaign finance required disclosure reports and their filing deadlines.

6

Case 3:26-cv-00616    Document 20-9    Filed 05/13/26    Page 22 of 44 PageID #: 377

- Preparing a report to the Bureau of Ethics and Campaign Finance certifying those candidates that have timely filed reports and providing a list of those candidates who have not filed their report – this is required each time a financial report filing is due.

- Contacting the schools (prior to the end of the school year) that will be used as polling places and make all necessary arrangements.

- Sending the nursing homes flyers and letters asking for lists of those residents that want to vote.

- Preparing locks, seals and certificates for absentee and precinct ballot boxes.

- Checking early voting locations and all polling places to ensure that they are ADA compliant and that all lights are working properly.

- Sending voter registration forms and inmate applications for absentee ballots by mail to the county jail, county correctional facility, and federal penitentiary.

- Notifying mandatory Motor Voter agencies of the voter registration deadline.

- Preparing materials for polling places (supplies, forms, posters, etc.).

- Sending letters to all precincts regarding notice of election, arrival/departure times, heat/air requirements, table/chair requirements, dates for delivery of equipment and supplies, etc.

- Preparing and submitting for publication all legal notices required by law.

- Notifying candidates, parties, and press when and where voting machines will be examined and certified prior to early voting and election day.

- Notifying candidates, parties, and press when and where the public examination of returns after the election will occur.

23. Beginning around June 10, 2022, we are also required to provide the State Coordinator of

Elections a report with the following information broken down by precinct every six months: beginning and ending numbers for the reporting period for active and inactive voters, new valid voter registrations, and purged voters. The report must also include all duplicate voter registration applications, the number of confirmation notices mailed out, and the number of responses received. Finally, the report must include the number of registrations received during the reporting period broken down into the following categories: registered in person, by-mail, with the Department of Safety, Public Assistance agencies, state funded agencies, armed forces recruitment offices, and passive voter registration agencies.

24. At the same time, our Office is handling many routine ongoing tasks such as conducing and processing voter registrations and changes of address and going to each private and public high school in the county to register new voters who will be eligible to vote by Election Day.

25. I understand that the Plaintiffs seek to change the Tennessee Senate, and the Tennessee House district maps, which would result in additional delays and significant costs to Shelby County. To implement new district lines, we would have to wait for our voter registration vendor to update their system so that we could then send out new notices to all registered voters about any polling place changes.

26. Based on the maps adopted by the General Assembly in February and our county census data, our Office has already mailed out notices regarding changes in districts, precincts, and polling places to all registered voters in the county for the upcoming May County Primary Election, the August County General and Federal Primary elections, and November Federal General Election, at a cost of approximately $375,000. There is always some degree of confusion among voters during redistricting years when their polling places change and changing the district maps at this time is likely to cause additional confusion requiring our Office to send additional notices (and incurring additional costs) to affected voters of a change to their polling place.

8

27. Based on my experience and that of my staff, if the qualifying deadline for the August Primary and General election were delayed to May 20, 2022, our Office would not be able to meet the federally mandated deadline to mail UOCAVA ballots to overseas and military voters by June 20, 2022, potentially disenfranchising those voters. It would also shorten the time for programming and public testing of the early and election day voting machines and increase the costs for additional technicians. Finally, in addition to incurring additional mailing costs, changing the State House and Senate district maps would also jeopardize our Office's ability to complete its obligations timely and accurately, and would likely result in significant voter confusion.

FURTHER AFFIANT SAITH NOT.

LINDA PHILLIPS
Shelby County Administrator of Elections

Sworn to and subscribed before me this 21st day of March 2022.

NOTARY PUBLIC

My Commission Expires: 5/8/2023

Case 3:26-cv-00616    Document 20-9    Filed 05/13/26    Page 25 of 44 PageID #: 380

# Exhibit C to Cameron-Vaughn Decl.

E-FILED
3/25/2022 8:17 PM
CLERK & MASTER
DAVIDSON CO. CHANCERY CT.



EXHIBIT
8

## IN THE CHANCERY COURT OF TENNESSEE
## FOR THE TWENTIETH JUDICIAL DISTRICT

AKILAH MOORE, TELISE TURNER, and GARY
WYGANT,

Plaintiffs,

v.

WILLIAM LEE, as Governor of Tennessee, in his
official capacity; TRE HARGETT, as Tennessee
Secretary of State, in his official capacity; and
MARK GOINS, as Tennessee Coordinator of
Elections, in his official capacity,

Defendants.

CASE NO. 22-0287-IV

Chancellor Perkins
Chancellor Maroney
Judge Sharp

## AFFIDAVIT OF CHRIS DAVIS
### Administrator of Elections, Knox County Tennessee

State of Tennessee
County of Knox

I, Chris Davis, do hereby state as follows under penalty of perjury:

1. I am the Administrator of Elections for Knox County, Tennessee. I have held this position since May 2020. I am over the age of eighteen years, and I am competent to testify in the matters set forth herein.

2. I am appointed by the Knox County Election Commission, and by law, I am the chief administrative officer of the Commission and responsible for the daily operations of the Office and the execution of all elections in Knox County. Many of my statutory duties, in addition to the execution of elections, are set forth in Tenn. Code Ann.§ 2-12-201. The Knox County Election Commission is staffed with ten (10) full-time and seven (7) part-time employees.

3. Knox County is the third largest county in Tennessee with a population of approximately

478,971 persons of which approximately 307,426 are registered voters including approximately 292,238 active and approximately 15,188 inactive registered voters. An inactive voter is a voter who has had no activity or contact with the Election Office, such as updating their name and/or address, signing a petition for a candidate running for office, or by participating in an election by voting.

4. The City of Knoxville and the Town of Farragut are in Knox County. The City of Knoxville is the third largest city in the State with a population of approximately 190,223 persons including approximately 104,172 registered voters.

5. There are three major elections held every two years in each of the 95 counties in Tennessee, not including municipal or special elections. During non-presidential election years, the County Primary Election is held on the first Tuesday in May, which this year is May 3, 2022. Next is the County General Election and State and Federal Primary Elections held on the first Thursday in August, currently scheduled for August 4, 2022. Finally, there is the State and Federal General Election which is held on the first Tuesday after the first Monday in November and is scheduled for November 8, 2022.

6. The ballot for the August elections is generally the largest and most complicated ballot since it includes offices for the County General as well as the State and Federal Primary elections. This year, the offices for all trial court judges, appellate court judges, and the District Attorney General are also included on the August ballot. In addition, the Town of Farragut holds its regular municipal elections during the August election.

7. Federal laws, including the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), require my office to mail overseas and military ballots out no later than forty-five (45) days before a federal election, including federal primary elections. The deadline to mail out the overseas ballots for the August 2022 Primary and General elections is June 20, 2022.

2

Case 3:26-cv-00616    Document 20-9    Filed 05/13/26    Page 28 of 44 PageID #: 383

8. Overseas and military ballot requests are received by the Knox County Election Commission long before the ballots have been finalized and printed. When a request is received, we immediately date and time stamp the request. If the request is not complete, we prepare and mail/email a rejection letter that contains the reason(s) for the rejection.

9. After we receive the printed ballots, we prepare the UOCAVA ballots for mailing or emailing to the voter. For mailed ballots, we access the information on our computer system for each request and enter the appropriate commands for an absentee ballot to be recorded as mailed. We then print two labels for each ballot: one for the address or the return envelope; and one for the address for the mailing envelope. The labels are then placed on the appropriate envelopes. The affidavit envelope, the ballot, the instructions, and the return envelope are then placed in the mailing envelope which is sealed and then physically taken to the Knox County Mail room by a bi-partisan team for mailing, or if mailing on a weekend we put the packets in first class packages and deliver them to the Post Office.

10. If the requestor asks for a ballot by email, the process is similar in that we access the information on our computer system and enter the appropriate commands for the absentee ballot to be recorded as emailed. Then we identify and locate the correct electronic version (PDF) of the ballot and attach it, the affidavit, and the instructions and send the email with the attachments to the email provided by the requestor.

11. It takes our Office approximately one week to prepare all the overseas ballots for mailing/emailing. Thus, to have sufficient time to mail the UOCAVA ballots forty-five (45) days before the election, we try to prepare the ballots for printing as soon as possible.

12. Pursuant to Tenn. Code Ann.§ 2-5-204(b)(1) and –(b)(2)(A), before we can begin preparing the ballot, we are required to wait until after the candidate withdrawal deadline (7 days after the qualifying deadline), and until after the executive committee determination deadline (7 days after

3

that).  For the August 2022 primary, the qualifying deadline is April 7, 2022, which means the earliest we can begin to prepare our ballots is April 21, 2022.

13. My understanding is that the Plaintiffs are asking to delay the qualifying deadline to May 20, 2022; however, for the reasons discussed below, such a delay would result in our Office's inability to mail the UOCAVA ballots by the deadline of June 20, 2022, 45 days before the August General and Primary elections of August 4, 2022.

14. If the qualifying deadline is delayed to May 20, 2022, then as discussed above, our Office would not be able to even begin building our ballots until June 3, 2022–two weeks after the delayed withdrawal and executive committee deadlines of noon on May 27, 2022, and noon on June 3, 2022, respectively.  In addition, before we can begin building the ballots the Knox County Election Commission is required to certify the candidates for the August General and Primary elections in an open meeting, which means that candidate certification deadline would also be delayed to after noon on June 3, 2022, at the earliest.  This leaves our Office with approximately 16 days to build and test the ballots for Knox County, send the draft/test ballot(s) to the 3rd party printer, receive the ballot(s) back from the 3rd party printer, have the ballot(s) approved by the State, proof them in-house, and mail them to the UOCAVA voters.  Based on historical experience of how long it takes to accomplish all of the above, it would be impossible to meet the June 20, 2022, deadline.

15. Based on my experience, for the August 2022 General and Primary elections I expect that there will be over ninety (90) different ballot types for Knox County.  I estimate it will take at least a week to ten (10) days to build the ballots and run them through the checks to ensure accuracy.

16. After the ballots have been created, they are sent to the Tennessee Secretary of State's Coordinator of Elections Office where they are reviewed for approval.  If the Coordinator's Office does not find any issues with any of the ballot styles, they will be approved within 2 to 3 days.  If they find any issues, they send them back for our Office to correct the deficiencies or address any

4

issues raised. After my Office corrects any deficiency or addresses any issues, we send them back to the Coordinator's Office for further review and approval. This could take up to a week or so depending on the number of issues raised by the Coordinator's Office.

17. Delaying the qualifying deadline will also significantly negatively impact our Office's programming of the early voting and election day voting machines for the August General and Primary elections. Since we can only begin programming the voting machines after the ballots have been built and approved by the state, it would push back programming of the voting machines to sometime between June 15th and June 17th, at the earliest.

18. In Knox County, we will use 270 voting machines for the August election, including 120 scanners, 110 touch-writer units (ADA compliant), and 40 Ballot-on-demand devices. It takes four (4) voting machine technicians approximately one (1) week to program the early voting machines and an additional week to ten (10) days to program the election day machines required to run an August election.

19. Early voting begins July 15, 2022, and runs through July 30, 2022, and the early voting machines and election day machines need to be picked up and delivered beforehand to their precincts. The early voting machines are scheduled to be picked up and delivered on July 10, 2022, and the election day machines are scheduled to be picked up and delivered on July 26-29, 2022. If the qualifying deadline is delayed to May 20, 2022, the ensuing delays in all other deadlines along the way would not give our technicians enough time to program and publicly test the machines by June 30th.

20. In addition to running county, state, and federal elections, we are also responsible for conducting municipal elections for which we have responsibilities up to the qualifying deadline. For example, when our Office issues a petition to a candidate, we must make sure that the petition is for the specific office in question and certify it as being original. In addition, the candidate is

5

Case 3:26-cv-00616 Document 20-9 Filed 05/13/26 Page 31 of 44 PageID #: 386

provided a candidate packet that includes several documents that cover all the laws and procedures concerning election and campaign financial disclosure laws. Each candidate is briefed by a staff member on all packet contents to ensure that they have no unanswered questions. So, in addition to performing all the duties in preparation for the August election, my staff and I will also be spending time issuing petitions and briefing candidates for the municipal and judicial elections taking place at the same time.

21. My staff and I also have many other tasks that must be completed during the qualifying deadline/filing deadline/UOCAVA mailing deadline to get ready for the August election. For example, beginning May 6, 2022, during the ninety days before the August election, voters who qualify to vote absentee can begin requesting absentee ballots. Our office is required to process the requests for absentee ballots using the same procedures for processing UOCAVA absentee ballot requests. I anticipate that there will be an increased number of persons voting absentee by mail in the 2022 elections because of lingering COVID-19 concerns.

22. Other duties that my staff and I are required to perform during this same time period include:

- Recruiting, verifying, hiring, and training approximately 700 poll workers to staff the early and election day precincts.

- Preparing the list of all qualified candidates for state public office and transmitting it to the Coordinator of Elections.

- Preparing the list of all qualified candidates and transmitting it to the Bureau of Ethics and Campaign Finance within three days of the qualifying deadline.

- Notifying candidates of all campaign finance required disclosure reports and when they must be filed.

- Preparing a report to the Bureau of Ethics and Campaign Finance certifying those candidates that have timely filed reports and a list of those candidates who have not filed

6

their report – this is required each time a financial report is due to be filed.

- Contacting the schools (prior to the end of the school year) that are used as polling places and make all necessary arrangements.

- Sending letters to county nursing homes to get lists of residents that want to vote.

- Preparing locks, seals and certificates for absentee and precinct ballot boxes.

- Checking early voting locations and all polling places to ensure that they are ADA compliant and available.

- Preparing a report form for daily running totals for absentee and early voting; preparing website for report to be updated daily.

- Sending voter registration forms and inmate applications for absentee ballots by mail to county jail and county correctional facility.

- Preparing materials for polling places (supplies, forms, posters, etc.).

- Preparing and submitting for publication all legal notices required by law.

- Notifying candidates, parties, and press when and where voting machines will be examined and certified prior to early voting and election day.

23. We also need to provide the State Coordinator of Elections the following information broken down by precinct every six months: beginning and ending numbers for the reporting period for active and inactive voters, new valid voter registrations, and purged voters. The report also must include the number of registrations received during the reporting period from the following categories: registered in person with Election Office, Department of Safety, By-mail registration, Public Assistance agencies, state funded agencies, armed forces recruitment offices, and passive voter registration agencies. Finally, the report must include all duplicate voter registration applications, the number of confirmation notices mailed out, and the number of responses received.

7

The first report is due around June 10th.

24. Additionally, we have many routine tasks that are ongoing during this same time. For example, our Office conducts voter registration continuously until twenty-nine days before an election. We daily transmit changes in the voter registration file to the Coordinator of Elections' Office, process all voter registrations submitted before the voter registration deadline, and process all change of addresses for any registrations submitted after the deadline up to the fifth day before election day. This includes registrations submitted in person to the Election Commission Offices, at supplemental registration booths at alternate locations such as fairs, festivals, career fairs, college campuses, etc. It also includes registrations collected by mandatory state voter registration agencies such as the departments of Safety, Health, Vocational Rehabilitation, Veterans Affairs, Mental Health, Armed Services Recruiters and Human Services, and from passive voter registration agencies such as the Library and Post Offices. And we also go to each private and public high school in the county to register new voters who will be eligible to vote by Election Day.

25. I understand that the Plaintiffs seek to change the Tennessee Senate, and the Tennessee House district maps, which would result in additional delays and significant costs to Knox County. To implement a new map, the Knox County Election Commission would have to work with a team of individuals from Knox Planning and KGIS (Knoxville-Knox County Geographic Information Systems) as well as folks from the State of Tennessee's Office of Local Government to look at the proposed/mandated changes and then work to ensure that no precinct has more than one Senate district or more than one County Commission district. When Knox County underwent this process earlier this year, it required three (3) meetings and nearly four weeks of meticulous work by the team at Knox Planning, so as to ensure that everything and every change was 100% accurate. If the maps are not 100% accurate, we run the risk of disenfranchising voters. After the redistricting efforts were complete, the Knox County Election Commission had to work with the Knox County's

8

Information Technology (IT) department to identify which voters and addresses were affected and work with both IT and an outside printer to prepare and send out new notices to registered voters about any changes to polling locations. A change in the maps would require updating the voter registration and polling place data for our registered voters and potentially another $15,000-$20,000 in mailing costs. Further, in my experience, changes in districts, precincts, and polling places typically causes some degree of confusion among the voting population and multiple change notifications in a short period of time is likely to cause significantly more confusion during this election cycle.

26. Based on my experience and that of my staff, if the qualifying deadline for the August Primary and General election were delayed to May 20, 2022, our Office would not be able to meet the deadline mandated by federal law to mail out UOCAVA ballots to overseas and military voters by June 20, 2022, disenfranchising those voters. Such a delay would also result in significant additional costs to complete voting machine programing and public testing by the August General and Primary elections. Finally, in addition to incurring significant additional mailing costs, changing the State House and Senate Maps would also jeopardize the ability of our office to complete its obligations timely and accurately, and would likely result in significant voter confusion.

FURTHER AFFIANT SAITH NOT.

CHRIS DAVIS
Knox County Administrator of Elections

Sworn to and subscribed before me this 22nd day of March 2022

NOTARY PUBLIC
My Commission Expires: 10/01/22

# Exhibit D to Cameron-Vaughn Decl.

E-FILED

3/25/2022 8:17 PM
CLERK & MASTER
DAVIDSON CO. CHANCERY CT.



EXHIBIT

7

# IN THE CHANCERY COURT OF TENNESSEE
## FOR THE TWENTIETH JUDICIAL DISTRICT

AKILAH MOORE, TELISE TURNER, and GARY
WYGANT,

Plaintiffs,

v.

WILLIAM LEE, as Governor of Tennessee, in his
official capacity; TRE HARGETT, as Tennessee
Secretary of State, in his official capacity; and
MARK GOINS, as Tennessee Coordinator of
Elections, in his official capacity,

Defendants.

CASE NO. 22-0287-IV

Chancellor Perkins
Chancellor Maroney
Judge Sharp

## AFFIDAVIT OF TAMMY SMITH

State of Tennessee
County of Wilson

I, Tammy Smith, do hereby state as follows under penalty of perjury:

1. I am the Administrator of Elections for Wilson County, Tennessee. I have held this position since January 8, 2022. Prior to that, I was the Assistant Administrator of Elections since 2011. I am over the age of eighteen years, and I am competent to testify in the matters set forth herein.

2. I am appointed by the Wilson County Election Commission and am the chief administrative officer of the Commission responsible for the daily operations of the Office and the execution of all elections in Wilson County. Many of my statutory duties are set forth in Tenn. Code Ann. § 2-12-201. The Wilson County Election Commission has 4 full-time and 1 part-time employees.

3. Wilson County is a county in Tennessee with a population of approximately 147,737 persons of which approximately 99,032 are registered voters.

4. There are three major elections held every two years in each of the 95 counties in Tennessee,

not including municipal or special elections. During non-presidential election years, the County Primary Election is held on the first Tuesday in May, which this year is May 3, 2022. Next is the County General and State and Federal Primary Elections held on the first Thursday in August, currently scheduled for August 4, 2022. Finally, there is the State and Federal General Election held on the first Tuesday after the first Monday in November and is scheduled for November 8, 2022.

5. The ballot for the August elections is generally the largest and most complicated ballot because it includes offices for the County General as well as the State and Federal Primary elections. This year, the offices for all trial court judges, appellate court judges, and the District Attorney General are also included on the August ballot.

6. Federal laws, including the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA") as amended by the Military and Overseas Voter Empowerment Act ("MOVEA") require my office to mail overseas and military ballots out no later than forty-five (45) days before a federal election, including federal primary elections. The deadline to mail out the overseas ballots for the August 2022 Primary and General elections is June 20, 2022.

7. Overseas and military ballot requests are received by the Wilson County Election Commission long before the ballots have been finalized and printed and we begin processing them as we receive them. It takes our Office approximately 3 days to prepare all the UOCAVA ballots for mailing/emailing, but only *after the ballots have been printed*. After the ballots are printed, we prepare the UOCAVA ballots for mailing or emailing to the voters, making sure we update our computer systems to indicate that a ballot has been sent and double checking that the correct ballot style is pulled for each requestor. We then mail or email the ballots to the requestors along with the affidavit, instructions, and in the case of mail, a return envelope. To have sufficient time to mail the UOCAVA ballots by the forty-five (45) days before the election deadline, it is imperative that

2

we prepare the ballots for printing as soon as possible.

8. Pursuant to Tenn. Code Ann. § 2-5-204(b)(1) and –(b)(2)(A), before we can begin preparing the ballot, we are required to wait until after the candidate withdrawal deadline (7 days after the qualifying deadline), and until after the executive committee determination deadline (7 days after that). For the August 2022 primary, the qualifying deadline is April 7, 2022, which means the earliest we can begin to prepare our ballots is April 21, 2022. After these deadlines pass, the Wilson County Election Commission certifies the candidates for the ballot. We then have our ballot approved by the Coordinator of Elections. Only then can we have the ballots printed.

9. My understanding is that the Plaintiffs are asking to delay the qualifying deadline to May 20, 2022; however, as addressed below, such a delay would mean that our Office will be unable to mail the UOCAVA ballots by the deadline of June 20, 2022, 45 days before the August 4, 2022, County General and State and Federal Primary elections.

10. If the qualifying deadline is delayed to May 20, 2022, then as addressed above, our Office could not be able to even begin building our ballots until May 30, 2022–3 days after the delayed withdrawal deadline of noon on May 27, 2022. In addition, the Election Commission's candidate certification deadline would also be delayed to sometime after noon on June 3, 2022, at the earliest. This leaves us with about 16 days to build and test the ballots for Wilson County, have them approved by the Coordinator of Elections, have the ballots printed and mail ballots to military and overseas voters. Delaying the qualifying deadline to May 20th would make it impossible to meet the June 20, 2022, UOCAVA mailing deadline.

11. Based on my experience, I expect Wilson County will have 414 different ballot styles for the August 2022 County General and State and Federal Primary elections, and I estimate it will take 2 weeks to build the ballots and run them through our accuracy checks before sending them to the Tennessee Secretary of State's Coordinator of Elections for review and approval. Approval takes

3

between 2 days and a week depending on whether the Coordinator's Office finds any deficiencies or issues with the ballots that need to be corrected.

12. After State approval, each ballot style is checked for accuracy. We listen to each audio ballot and bring each ballot up on a ballot marking device to ensure that each voter will receive the correct ballot style they are assigned to in the voter registration system based on their residential address. This is a long process and will take a week to complete.

13. Delaying the qualifying deadline will also negatively impact the programming of our early voting and election day voting machines for the August elections because we can only begin programming the machines after the withdrawal and party certification deadlines, the Election Commission candidate certification vote, and after the ballots are built and approved. Thus, programming the voting machines would be delayed until June 15-17 or later.

14. In Wilson County, for the August election we need about 200 voting machines for the election. Each is programmed with all ballot styles because we use a vote center model for voting—just like early voting but on Election Day. It takes about 1 week to program all of the machines. After the machines are programmed, a complete logic & accuracy test is completed and a public meeting is conducted to certify that all machines have zero votes. Seals are then placed on each one and recorded on a certification form where all who are present sign attesting that the information is correct.

15. Early voting begins July 15, 2022 and runs through July 30, 2022. In addition to programming and publicly testing the machines, they need to be delivered beforehand to their locations. Early voting machines will be picked up and delivered on July 12, 2022 and the election day machines on August 3, 2022. If the qualifying deadline is delayed, the ensuing delays in all other deadlines would not give our technicians enough time to program and publicly test the machines before they are scheduled to be delivered to their vote centers without hiring any

4

additional technicians, which I estimate would cost $5000 in wages and overtime.

16. In addition to running county, state, and federal elections, my office is also responsible for conducting municipal elections and provide various services for those elections too. For example, when we issue a petition to a candidate, we make sure we give them the right petition for the office in question and certify it as an original petition. All candidates are also provided a packet containing several documents with explanations of election and campaign financial disclosure laws, and each candidate is briefed by a staff member on all packet contents ensuring they have no unanswered questions.

17. My staff and I also have many other tasks that must be completed during the qualifying/filing and UOCAVA mailing deadlines to prepare for the August elections. For example, beginning May 6, 2022, during the 90 days before the elections, voters who qualify to vote absentee can begin requesting absentee ballots and our office is required to process the requests using the same procedures for processing UOCAVA absentee ballot requests. Due to lingering COVID-19 concerns, I expect a significant number of voters will vote absentee in the 2022 elections.

18. Other duties that my staff and I are required to complete during this same time period include:

- Recruiting, verifying, hiring, and training approximately 300-350 poll workers.

- Preparing the list of all qualified candidates and sending it to the Coordinator of Elections.

- Preparing the list of all qualified candidates and transmitting it to the Bureau of Ethics and Campaign Finance within 3 days of the qualifying deadline.

- Notifying candidates of all campaign finance required disclosure reports and their filing deadlines.

5

- Preparing a report to the Bureau of Ethics and Campaign Finance certifying those candidates that have timely filed reports and providing a list of those candidates who have not filed their report – this is required each time a financial report filing is due.

- Contacting the schools (prior to the end of the school year) that will be used as polling places and make all necessary arrangements.

- Sending the nursing homes flyers and letters asking for lists of those residents that want to vote.

- Preparing locks, seals and certifications for absentee ballot boxes.

- Preparing locks, seals and certifications for provisional ballot bags.

- Checking early voting locations and all polling places to ensure that they are ADA compliant and that all lights are working properly.

- Sending voter registration forms and inmate applications for absentee ballots by mail to the county jail.

- Notifying mandatory Motor Voter agencies of the voter registration deadline.

- Preparing materials for polling places (supplies, forms, posters, etc.).

- Sending letters to all precincts regarding notice of election, arrival/departure times, heat/air requirements, table/chair requirements, dates for delivery of equipment and supplies, etc.

- Preparing and submitting for publication all legal notices required by law.

- Notifying candidates, parties, and press when and where voting machines will be examined and certified prior to early voting and election day.

- Notifying candidates, parties, and press when and where the public examination of returns after the election will occur.

6

Case 3:26-cv-00616    Document 20-9    Filed 05/13/26    Page 42 of 44 PageID #: 397

19. Beginning around June 10, 2022, we are also required to provide the State Coordinator of Elections a report with the following information broken down by precinct every six months: beginning and ending numbers for the reporting period for active and inactive voters, new valid voter registrations, and purged voters. The report must also include all duplicate voter registration applications, the number of confirmation notices mailed out, and the number of responses received. Finally, the report must include the number of registrations received during the reporting period broken down into the following categories: registered in person, by-mail, with the Department of Safety, Public Assistance agencies, state funded agencies, armed forces recruitment offices, and passive voter registration agencies.

20. At the same time, our office is handling many routine ongoing tasks such as processing voter registrations and changes of address and going to each private and public high school in the county to register new voters who will be eligible to vote by Election Day.

21. I understand that the Plaintiffs seek to change the Tennessee Senate, and the Tennessee House district maps, which would result in additional delays and significant costs to Wilson County. To implement new district lines, we would have to manually update our voter registration system so that we could then send out new notices to all registered voters about any precinct changes. This process takes, at least, 2 weeks to complete. There would be additional cost of mailing notifications out to each voter—that cost is not included in our budget.

22. Based on the maps adopted by the General Assembly in February and our county census data, our Office has already mailed out notices regarding changes in districts, precincts, and polling places to all registered voters in the county for the upcoming May County Primary Election, the August County General and Federal Primary elections, and November Federal General Election, at a cost of approximately $60,000. There is always some degree of confusion among voters during redistricting years when their polling places change and changing the district maps at this time is

7

likely to cause additional confusion requiring our Office to send additional notices (and incurring additional costs) to affected voters of a change to their polling place.

23. Based on my experience and that of my staff, if the qualifying deadline for the August Primary and General election were delayed to May 20, 2022, our office would not be able to meet the federally mandated deadline to mail UOCAVA ballots to overseas and military voters by June 20, 2022, potentially disenfranchising those voters. It would also shorten the time for programming and public testing of the early and election day voting machines and increase the costs for additional technicians. Finally, in addition to incurring additional mailing costs, changing the State House and Senate district maps would also jeopardize our Office's ability to complete its obligations timely and accurately, and would likely result in significant voter confusion.

FURTHER AFFIANT SAITH NOT.

TAMMY SMITH
Wilson County Administrator of Elections

Sworn to and subscribed before me this 22nd day of March 2022.

NOTARY PUBLIC

My Commission Expires: 8-29-23

8

Case 3:26-cv-00616    Document 20-9    Filed 05/13/26    Page 44 of 44 PageID #: 399