# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

AMBER SHERMAN, RACHAEL SPRIGGS, KERMIT MOORE, BLACK CLERGY COLLABORATIVE OF MEMPHIS, MEMPHIS A. PHILIP RANDOLPH INSTITUTE, THE EQUITY ALLIANCE,

*Plaintiffs*,

v.

TRE HARGETT, in his official capacity as Secretary of State of Tennessee, MARK GOINS, in his official capacity as Coordinator of Elections for Tennessee, STATE ELECTION COMMISSION, and DONNA BARRETT, JUDY BLACKBURN, JIMMY ELDRIDGE, MIKE MCDONALD, SECONDRA MEADOWS, VANECIA BELSER KIMBROW, and KENT YOUNCE, in their official capacities as members of the State Election Commission,

*Defendants*.

**THREE-JUDGE PANEL REQUESTED**

Civil Action No 26 Civ. 616

Judge Campbell

## RESPONSE TO DEFENDANTS' NOTICE

In this action, Plaintiffs allege that in enacting the May 2026 Map, the Tennessee General Assembly violated the United States Constitution by discriminating against Black Memphians based on their race and by retaliating against Black Memphians for their political expression and association. *See* Verified Compl., ECF No. 1, ¶¶ 1–125. Plaintiffs' motion for a temporary restraining order (TRO) and/or preliminary injunction, which is supported by a 60-page, footnoted Verified Complaint, four sworn declarations from affected voters and organizations, and four expert reports, is currently pending. *See* Pl.'s TRO & PI Mot., ECF No. 20.

Defendants recently filed a Notice on the docket in this case indicating that they had moved to consolidate this action with *Hale v. Lee*, another action before this Court arising out of

the May 2026 redistricting that produced the May 2026 Map, and appending their consolidation motion from *Hale*. *See* Notice, ECF No. 26; *see also* Motion to Consolidate, *Hale v. Lee*, No. 26 Civ. 603, Dkt. No. 39 (M.D. Tenn. May 13, 2026). Plaintiffs submit this response to the Notice.

This case is fundamentally different from *Hale*, because Plaintiffs here assert different legal claims from those in *Hale*, suffer different harms, and seek different remedies. That premise leads to two further conclusions. First, consolidation should be denied. And second, Plaintiffs' pending TRO request should be granted.

1.      Consolidation pursuant to Federal Rule 42 is entirely discretionary, but the decision to consolidate "must be made thoughtfully, with specific reference" to the "risk[] of prejudice" from yoking unrelated parties and claims together, the specific need to avoid "inconsistent adjudications of common factual and legal issues," and the efficiency gains, if any, for witnesses, parties, or the court from trying the cases together. *Cantrell v. GAF Corp.*, 999 F.2d 1007, 1011 (6th Cir. 1993) (citation omitted). Here, because the claims in this action are completely distinct from those in *Hale*, there are no common questions of law or common questions of material fact that must be heard together to avoid inconsistency. There would be virtually no efficiency gains from consolidation at any stage in the case, and no benefits to consolidation that could not be gained by simply coordinating at the preliminary stages. But consolidating these very different actions, which involve different legal theories, different discovery needs, and different timelines, could result in substantial prejudice and confusion of the issues.

Plaintiffs in this action assert that the May 2026 Map is unconstitutional and may *never* be lawfully implemented because it was enacted with racial discrimination as a motivating factor in violation of the Fourteenth and Fifteenth Amendments, and/or was motivated by retaliation against Black Memphians in violation of the First Amendment. *See generally* Verified Compl., ECF No.

1; *see also* Pl.'s TRO & PI Mot., ECF No. 20, at 4-22. Plaintiffs set forth in detail in their Verified Complaint how the May 2026 Map was enacted in a legislative environment where members of the White-dominated political faction controlling the General Assembly have expressed animus towards Black Tennesseans and the predominantly Black city of Memphis, how the legislative process for enacting the May 2026 Map was marked by unprecedented and extreme procedural irregularities, how in enacting the May 2026 Map legislators indicated that they were targeting Memphis and destroying Congressional District 9 based on race (and never once substantiated vague assertions that the May 2026 Map was based on "politics"), and how the May 2026 Map intentionally and foreseeably cracks and dilutes the votes of Black Memphians. Verified Compl. ¶¶ 22–99. Plaintiffs assert that the General Assembly's imposition of the May 2026 Map was impermissibly motivated by racial discrimination under *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266 (1977), and constitutes unlawful First Amendment retaliation under the established framework for such claims in this circuit, *see, e.g.*, *MacIntosh v. Clous*, 69 F.4th 309, 315 (6th Cir. 2023); *see also Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 198 (2024). Verified Compl. ¶¶ 100–125. Plaintiffs' expert submissions supporting their motion for a TRO or preliminary injunction provide further analysis, demonstrating, for example, that Congressional District 9 is a naturally-occurring Black-majority district that has existed for a century, and that it is *statistically impossible* for a map based on neutral principles to dilute Black Tennesseans' votes as badly as the May 2026 Map does. *See* Pl.'s TRO and PI Mot. Ex. 4, Report of Dr. Jonathan Cervas, ECF No. 20-4 at ¶¶ 24, 27, 30–31, 33 & figs. 1 and 2; *see also* Pl.'s TRO & PI Mot. Ex. 1, Report of Dr. Marvin King, ECF No. 20-1; Pl.'s TRO & PI Mot. Ex. 2, Expert Declaration of Dr. Kassra AR Oskooii ECF No. 20-2; Pl.'s TRO & PI Mot. Ex. 3, Report of L. Arthi Krishnaswami, ECF No. 20-3.

The *Hale* Plaintiffs, by contrast, do not assert that the May 2026 Map is itself unlawful. Compl. ¶ 5, *Hale v. Lee*, No. 26 Civ. 603, Dkt. No. 1 (M.D. Tenn. May 7, 2026) (*Hale* Compl.) ("Plaintiffs do not herein challenge the apportionment decisions codified in the Act."); *see also* Pls.' Mot. for a TRP or PI at 1, *Hale v. Lee*, No. 26 Civ. 603, Dkt. No. 11 (M.D. Tenn. May 8, 2026) ("*Hale* TRO/PI Mot.") ("Plaintiffs do not challenge the new Congressional Districts themselves in this Action."). Rather, they merely assert that implementing the May 2026 Map *for the 2026 election cycle* would be unlawful. *E.g.*, *Hale* TRO/PI Mot. at 1 (seeking injunction against "implementing and enforcing new Tennessee Congressional Districts and new election rules during the 2026 election cycle"). More specifically, the *Hale* plaintiffs assert that Tennessee election officials will not have sufficient time to implement the new map before the August 2026 primary election, and that this time crunch will compromise administration of the election and lead to additional burdens on voters and candidates. *Hale* Compl. ¶¶ 7–12. They assert that the likely issues with implementing the May 2026 Map in advance of the August primary will amount to a burden on their right to vote and their right of association under the *Anderson-Burdick* standard for assessing whether an election administration rule places an undue burden on the fundamental right to vote. *Id.* ¶¶ 76–79, 82–86. The bulk of the factual allegations in the *Hale* pleadings revolve around prior litigation from 2022 where Tennessee election officials made various statements about the difficulty of implementing new congressional lines. *E.g.*, *id.* ¶¶ 47–73. The *Hale* plaintiffs' motion for injunctive relief is supported not by evaluation of the General Assembly's motivations or expert analysis of the May 2026 Map's impacts on Black voters but based on declarations from political candidates and others about how trying to implement the May 2026 Map this late in the process would impose significant practical burdens on the electoral process for the purposes of elections this year. *E.g.*, *Hale* TRO/PI Mot., Exs. N–V.

The two actions are thus fundamentally different in nature. They proceed based on entirely different legal theories, and different injuries. Indeed, while this action unquestionably requires a three-judge panel for the adjudication of Plaintiffs' claims, the same is not necessarily true for *Hale*, because the *Hale* plaintiffs' attacks on the implementation of the May 2026 Map, for purposes of the 2026 election cycle only, do not amount to "challenging the constitutionality of the apportionment of congressional districts" in Tennessee. 28 U.S.C. § 2284(a). Moreover, Plaintiffs in this matter bring claims that will survive for final merits adjudication even after the 2026 election cycle (although preliminary relief should be granted in the meantime to maintain the status quo and prevent irreparable harm), and that may ultimately entail significant expert discovery and discovery from third parties, including members of the General Assembly. The *Hale* action, by contrast, may not involve such discovery, and indeed could well be rendered moot once the 2026 election cycle is concluded. Formally consolidating two actions that raise fundamentally different claims, have different procedural specifications and needs, different discovery needs, and different timelines for trial on the merits would make no sense and would create a significant risk of prejudice while gaining next to nothing in efficiency.

2. The fundamental differences between this action and *Hale* also lead to a second conclusion: The TRO in this case can and should be granted, notwithstanding the denial of the TRO in *Hale.*

Plaintiffs' action is not about the feasibility of implementing the May 2026 Map this year. Plaintiffs allege that the act of imposing the May 2026 Map on Black Memphians was unlawful, full stop, and that it may not be permissibly imposed on voters *ever*. Running *any* elections on an unconstitutional, illegal map that was based on unconstitutional racial discrimination and/or retaliation would constitute irreparable harm to Black voters as a matter of black-letter law. *See*

*Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012); *see also Singleton v. Merrill*, 582 F. Supp. 3d 924, 1026–27 (N.D. Ala. 2022) (plaintiffs "suffer an irreparable harm" when they must vote in "elections based on a redistricting plan that violates federal law"), *aff'd sub nom. Allen v. Milligan*, 599 U.S. 1 (2023); *accord* Pl.'s TRO and PI Mot. 22–24. Plaintiffs have thus sought a TRO to preserve the status quo ante by keeping the lawful 2022 map in place while a three-judge panel can be assembled to hear their motion for a preliminary injunction. *See* Pl.'s TRO and PI Mot., ECF No. 20, at 24-25; *see also, e.g.*, *Becker v. Granholm*, 272 F. Supp. 2d 643, 649 (E.D. Mich. 2003) (status quo ante is "the last peaceable uncontested status that existed before the dispute arose"). A TRO is necessary because, in the absence of a TRO, it may be too late for election officials to revert back to the lawful 2022 map by the time a preliminary injunction motion is decided. Pl.'s TRO and PI Mot. 24 (explaining how "with each passing day, reversion to a lawful map becomes more difficult").

The issue of irreparable harm necessitating immediate TRO relief in this action is thus fundamentally distinct from the presentation of the issue in *Hale*. In *Hale*, the issue was only whether election administrators would be able to implement the May 2026 Map in time for the August primary without burdening the rights of voters and candidates. *Hale* TRO/PI Mot. 1–5, Def.'s Opp. But in this action, the issue for purposes of the need for immediate relief is whether, absent a TRO, election administrators will be able to *both* (1) implement the May 2026 Map as they may be beginning to do now *and then* (2) switch back to the lawful 2022 map in time for the August primary after the grant of a preliminary injunction. If they cannot do both—and the evidence and common sense support that this much more challenging feat would not be possible and would cause substantial voter confusion, too, Pl.'s TRO and PI Mot. 22–25—then the right course is to (1) issue a TRO now to preserve the status quo and avoid the irreparable harm of

6

running elections on a map that was motivated by racial and retaliatory animus against Black Memphians as set forth in Plaintiffs' Verified Complaint and extensive supporting submissions, and then (2) set the case for a preliminary injunction hearing once a full three-judge Court is constituted. This Court can thus grant the TRO in this case notwithstanding the denial of the TRO in *Hale*.

## CONCLUSION

The Court should deny the motion to consolidate this case with *Hale*. Plaintiffs' motion for a temporary restraining order enjoining use of the May 2026 Map should issue until the motion for a preliminary injunction can be heard and decided by a three-judge panel.

Dated this 15th day of May, 2026

Respectfully submitted,

/s/ *Lucas Cameron-Vaughn*

Ari J. Savitzky*
Theresa J. Lee*
Dayton Campbell-Harris*
Jonathan Topaz*
Sophia Lin Lakin*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
asavitzky@aclu.org
tlee@aclu.org
dcampbellharris@aclu.org
jtopaz@aclu.org
slakin@aclu.org

Lucas Cameron-Vaughn (36284)
Zee Scout (042637)
ACLU FOUNDATION OF TENNESSEE
P.O. Box 120160
Nashville, TN 37212
(615) 320-7142
lucas@aclu-tn.org
zscout@aclu-tn.org

*motion for admission *pro hac vice* pending