# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

AMBER SHERMAN, RACHAEL SPRIGGS,
KERMIT MOORE, BLACK CLERGY
COLLABORATIVE OF MEMPHIS, MEMPHIS
A. PHILIP RANDOLPH INSTITUTE, THE
EQUITY ALLIANCE,

        *Plaintiffs*,

    *v.*

TRE HARGETT, in his official capacity as
Secretary of State of Tennessee, MARK GOINS,
in his official capacity as Coordinator of Elections
for Tennessee, STATE ELECTION
COMMISSION, and DONNA BARRETT, JUDY
BLACKBURN, JIMMY ELDRIDGE, MIKE
MCDONALD, SECONDRA MEADOWS,
VANECIA BELSER KIMBROW, and KENT
YOUNCE, in their official capacities as members
of the State Election Commission,

        *Defendants*.

**THREE-JUDGE PANEL**

Civil Action No 26 Civ. 616

Judges Campbell, Stivers, and Nalbandian

**HEARING REQUESTED**

 

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Tennessee must not force voters to use a congressional map that is likely the product of intentional racial discrimination. This Court's solemn duty now is to prevent the grave risk of irreparable harm by enforcing our Constitution's firm prohibition against such discrimination and reinstating the undisputedly lawful 2022 congressional map for the 2026 elections.

## I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

Defendants ignore rather than dispute extensive, specific evidence of racial motivation in the districting process. *See* Pls.' PI Br., Dkt. 20, at 6–13; Verified Compl., Dkt. 1, ¶¶ 22–99.

They do not dispute that the Tennessee Legislature is controlled by a White-dominated political faction whose members and leaders have made numerous, recent statements exhibiting animus towards Black Tennesseans, including calling Black legislators "baboons," suggesting lynching be resurrected, targeting Black members for expulsion, and repeatedly attacking the majority-Black City of Memphis, including via legislative action *this session*, while invoking tropes about Black criminality and incompetence. *E.g.*, Pls.' PI Br. 8; Verified Compl. ¶¶ 33–45.[1]

They do not dispute that, right after the decision in *Louisiana v. Callais*, 146 S. Ct. 1131 (2026), this faction rushed to destroy Congressional District 9, a naturally-occurring Black-majority district not drawn pursuant to any court order, and the only majority-Black congressional district in Tennessee. *E.g.*, Pls.' PI Br. 7; Verified Compl. ¶¶ 37, 69, 46–49. They do not dispute that this faction cracked District 9 as part of an unprecedented, frenzied, mid-decade, mid-cycle redistricting process that violated (and required repeal of) state law, adopting a plan inconsistent

---

[1] Defendants bristle at Plaintiffs' pointing out that a White-dominated supermajority faction controls the General Assembly. Defs.' Br., Dkt. 43, at 17. But those undisputed facts are relevant to the constitutional analysis. *See White v. Regester*, 412 U.S. 755, 766 (1973) (noting the "white-dominated organization that is in effective control of [the] Democratic Party" as evidence of intentional vote dilution); *accord Louisiana v. Callais*, 146 S. Ct. 1131, 1145–46 (2026) (affirming the analysis in *White*). And it is not merely the race of this clique that matters; it is their *statements and actions*.

with 100 years of maps. *E.g.*, Pls.' PI Br. 8–9; Verified Compl. ¶¶ 28–32, 50–59, 71–83; Ex. A, Reply Expert Report of Dr. Jonathan R. Cervas ("Cervas Response"), ¶¶ 5–7, 20 & fig. 1.

They do not dispute the statements of sponsors and proponents of the May 2026 Map that directly and indirectly indicate racial motives, including (a) invoking racist tropes by nonsensically suggesting that cracking Memphis would reduce crime, (b) expressly claiming that "Census data" (which includes racial data) was used to draw the map without identifying any political data that was also used, and (c) offering canned, bizarre, robotic responses to basic questions about the map, the process, and the demographics of Memphis, indicating dissembling and hidden motives. *E.g.*, Pls.' PI Br. 11–13; Verified Compl. ¶¶ 60–70. And they do not dispute that the May 2026 Map divides Black Memphians across three White-majority districts, each stretching from Shelby County deep into central Tennessee—with the utterly foreseeable result being "to diminish or dilute the political efficacy of" Black Memphians, *Rogers v. Lodge*, 458 U.S. 613, 621 (1982) (citation modified). *E.g.*, Pls.' PI Br. 9–11; Verified Compl. ¶¶ 87–99.

Defendants repeat *ad nauseum* that the motivation for the May 2026 Map was exclusively partisan, a mantra that never comes with any evidence or substantiating detail. *See* Defs.' Br., Dkt. 43, at 1–5, 8–21 (repeating "partisan" or "political" 20-plus times). They claim the plan was drawn "without the use of any racial data," *e.g.*, Defs.' Br. 4 & n.5, 8, but never identify the partisan or electoral data that was used to draw the plans. And whatever data were used, Defendants also don't dispute that legislators knew the majority-Black status of Shelby County or Memphis or District 9 (despite their bizarre refusal to acknowledge as much), or that their plan submerged Black Memphians across White-majority districts. *E.g.*, Defs.' Br. 13–15. Defendants cite national partisan redistricting wars as reason for the May 2026 Map, Defs.' Br. 1, 5, but those battles have raged since last year. Yet the Legislature only moved to crush Tennessee's longstanding, lone

Black-majority district the moment *Callais* came out.

The assertion that partisanship alone explains the May 2026 Map is not supported by Defendants' expert Dr. Michael Barber, who (a) does not disagree with any of Plaintiffs' experts' quantitative and visual analysis, and in fact (b) effectively acknowledges that race could also explain the Legislature's actions. Barber Report, Dkt. 43-3, at 5–6, 15, 25–33; *see also* Ex. B, Rebuttal Report of Dr. Kassra Oskooii ("Oskooii Response") ¶¶ 5, 8–10; Cervas Response ¶¶ 4, 8. Both Defendants and Dr. Barber ignore evidence showing the independent role of race, including expert scholarship on how partisan alignment is downstream from race, *see* Report of Dr. Marvin King, Dkt. 20-1, at 3–5; *see also* Oskooii Response ¶¶ 11–20, as well as the post-*Callais* timing of the redistricting and the evidence of racial animus towards Black legislators and the Black-majority City of Memphis, *supra* at 1–2. And Dr. Barber's simulation analysis, which he claims supports partisan motives, is so flawed and contrived that the instructions for the software program he used indicate that his results are invalid. *See* Oskooii Response ¶¶ 21–31; Cervas Response ¶¶ 8–11.

If merely saying "politics" and then invoking the general presumption of good faith were enough to overcome extensive, specific evidence of racial discrimination, the Constitution's prohibition of such discrimination would be rendered a dead letter.[2]

Defendants' other arguments fare no better. They briefly question Plaintiffs' Article III standing but then acknowledge Plaintiffs and their members can challenge the districts that crack Memphis. Defs.' Br. 8. That ends that. Defendants next claim that direct evidence is required to

---

[2] The presumption of good faith is overcome here in light of significant evidence of actual racial animus by legislators in the controlling faction and other evidence of intent to dilute the voting strength of Black Memphians by targeting District 9 for destruction. Such evidence "suffice[s] to rebut the presumption of good faith." *Tenn. State Conf. of NAACP v. Lee*, 746 F. Supp. 3d 473, 504 (M.D. Tenn. 2024) (three-judge panel). This is not a case where Plaintiffs' "proof of discriminatory animus" is based merely on some "legal disagreement with [an] earlier remedial order." Slip Op. at 3, *Allen v. Milligan*, 608 U. S. _____ (2026) (per curiam).

invoke the *Arlington Heights* analysis. Defs.' Br. 10–11. That is wrong (because circumstantial evidence can satisfy the "motivating factor" test, *e.g.*, *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977); *accord Rogers*, 458 U.S. at 618), and irrelevant (because there *is* direct evidence here, *see supra* at 1–2). More broadly, Defendants conflate claims under *Arlington Heights* with racial gerrymandering claims. *E.g.*, Defs.' Br. 11–12, 16–22. But *Arlington Heights* claims are "analytically distinct" and "follow[] a 'different analysis.'" *Alexander v. S.C. State Conf. of the NAACP*, 602 U.S. 1, 38–39 (2024) (citation omitted).

Most of Defendants' remaining arguments fail due to this category error. For example, while an "alternative map" is needed for racial gerrymandering claims to show that race *predominated* over partisan considerations, *Alexander*, 602 U.S. at 34–35, under *Arlington Heights*, a plaintiff need not prove discrimination "was the 'dominant' or 'primary'" purpose, only a "motivating factor," 429 U.S. at 265–66. *Cf. Alexander*, 602 U.S. at 38–39 (intentional vote dilution has "the purpose and effect of diluting the minority vote" but for racial gerrymandering the harm is "the racial classification itself") (internal quotation marks omitted). Defendants' insistence on perfectly disentangling race and politics (*e.g.*, Defs.' Br. 18–19) is similarly inapposite; Plaintiffs need only show that race was a motivating factor independent of politics.

Defendants halfheartedly contest the discriminatory effects of the May 2026 Map, Defs.' Br. 19, but those effects are obvious. Black voters wielded power in Memphis congressional elections; now they are dispersed across districts where their chosen candidates are likely to be defeated. *E.g.*, Pls.' PI Br. 8–9. Defendants' own expert concedes the "racial effects" of the map on Black Memphians, *see* Barber Report 15. *Accord Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. for City of Bos.*, 145 S. Ct. 15, 17 (2024) (Alito, J., dissenting from the denial of cert.) ("[T]o rely on disparate impact as circumstantial evidence" a party must show the challenged

4

policy "reduced one racial group's" opportunities and "increased [those of] another racial group[]."). Plaintiffs' likelihood of success firmly supports injunctive relief.[3]

**II.      THE REMAINING FACTORS SUPPORT GRANTING INJUNCTIVE RELIEF**

"An official action . . . taken for the purpose of discriminating against [a group] on account of their race has no legitimacy at all under our Constitution." *City of Richmond v. United States*, 422 U.S. 358, 378 (1975). All Tennesseans, especially Plaintiffs, will be grievously and irreparably harmed if forced to vote under a map that was likely enacted with discrimination as a motivating purpose—and the strong probability that the May 2026 Map is so tainted thus powerfully supports granting injunctive relief. The balance of harms does, too: Defendants never dispute that that 2022 map is lawful, has been in place for multiple cycles, and can be used again this year (as all understood it would be until just last month).

Defendants wrongly invoke the *Purcell* principle. Defs.' Br. 22–23. Using the 2022 congressional map, which all agree is fair and lawful, for this year's elections will minimize "cost, confusion, or hardship" for voters, candidates, and election officials. *Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring). An injunction maintaining the status quo ante is much simpler and more workable than hastily re-assigning voters mid-election cycle. And in the end, no principle of law can justify forcing voters to elect representatives using what is likely an intentionally discriminatory map. *City of Richmond*, 422 U.S. at 378.

<strong>CONCLUSION</strong>

Plaintiffs' motion should be granted and a preliminary injunction should issue.

---

[3] Plaintiffs are likely to succeed on their First Amendment claim as well. Defendants' only counterargument is to claim that *Rucho* controls, Defs.' Br. 19–22, but they fail to engage with Plaintiffs' core point: This case is unique and different from *Rucho*, because, in Defendants' own telling, *see supra* at 2–3, here the *entire redistricting process* was initiated solely and exclusively to suppress Black Memphians' associational and expressive conduct. Pls.' PI Br. 20–22.

5

Plaintiffs request a hearing and/or argument on the motion.

Dated this 3rd day of June, 2026

Lucas Cameron-Vaughn (36284)
Zee Scout (042637)
ACLU FOUNDATION OF TENNESSEE
P.O. Box 120160
Nashville, TN 37212
(615) 320-7142
lucas@aclu-tn.org
zscout@aclu-tn.org

Respectfully submitted,

/s/ *Ari Savitzky*
Ari J. Savitzky*
Theresa J. Lee*
Dayton Campbell-Harris*
Jonathan Topaz*
Sophia Lin Lakin*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
asavitzky@aclu.org
tlee@aclu.org
dcampbellharris@aclu.org
jtopaz@aclu.org
slakin@aclu.org

*admitted *pro hac vice*

6