# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

AMBER SHERMAN, *et al.,*                 )
                                         )
     *Plaintiffs,*                       )  No. 3:26-cv-00616
                                         )  THREE-JUDGE COURT
v.                                       )
                                         )
TRE HARGETT, in his official capacity    )
as Secretary of State of Tennessee, *et al.,*  )
                                         )
     *Defendants.*                       )


## REPLY IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS PLAINTIFFS' COMPLAINT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................................ii

REPLY ........................................................................................................................................... 1

    I.      Plaintiffs Fail to Allege a Plausible Claim of Intentional Vote Dilution. ............. 1

    II.    Plaintiffs' First Amendment Claim Is Neither Justiciable Nor Plausible. ........... 5

CERTIFICATE OF SERVICE ........................................................................................................ 7

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. LULAC,*
 146 S. Ct. 418 (2025)..................................................................................... 2, 4

*Abbott v. Perez,*
 585 U.S. 579 (2018)......................................................................................... 4

*Alexander v. S.C. State Conf. of the NAACP,*
 602 U.S. 1 (2024)...................................................................................... 3, 4, 5

*Allen v. Milligan,*
 146 S. Ct. 1377 (2026)..................................................................................... 6

*Allen v. Milligan,*
 599 U.S. 1 (2023)............................................................................................. 5

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009)...................................................................................... 2, 3

*Christian Ministerial Alliance v. Jester,*
 786 F. Supp. 3d 1134 (E.D. Ark. 2025) ........................................................... 4

*Gill v. Whitford,*
 585 U.S. 48 (2018)........................................................................................... 1

*Louisiana v. Callais,*
 146 S. Ct. 1131 (2026)............................................................................ 1, 3, 5, 6

*Nat'l Rifle Ass'n of Am. v. Vullo,*
 602 U.S. 175 (2024)......................................................................................... 7

*Rucho v. Common Cause,*
 588 U.S. 684 (2019)................................................................................... 1, 6, 7

*Tenn. State Conf. of the NAACP v. Lee,*
 746 F. Supp. 3d 473 (M.D. Tenn. 2024) ................................................ 1, 2, 3, 4, 5

*White v. Regester,*
 412 U.S. 755 (1973)......................................................................................... 4

*Williams v. Hall,*
 810 F. Supp. 3d 637 (M.D.N.C. 2025)............................................................. 4

Case 3:26-cv-00616    Document 60    Filed 07/17/26    Page 3 of 10 PageID #: 882

**REPLY**

The last time a redistricting challenge asserted Tennessee's congressional districts were unconstitutional, the complaint was dismissed given the obvious political explanation for district lines. *Tenn. State Conf. of the NAACP v. Lee*, 746 F. Supp. 3d 473, 504 (M.D. Tenn. 2024). The only difference this time—Tennessee's political goal, unstated in *Lee*, was open and obvious. This legitimate political purpose can no longer be confused for discrimination. *See Louisiana v. Callais*, 146 S. Ct. 1131, 1155-57 (2026). And Plaintiffs' tag-along First Amendment claim is foreclosed by *Rucho v. Common Cause*, 588 U.S. 684, 713-14 (2019). Like the dismissal in *Lee*, this Court should dismiss Plaintiffs' complaint.[1]

## I.      Plaintiffs Fail to Allege a Plausible Claim of Intentional Vote Dilution.

**A.** Plaintiffs emphasize they need only allege "racial discrimination was *one* motivating factor." Opp. 6 (emphasis added). That same standard did not preclude dismissal in *Lee*, 746 F. Supp. 3d at 504. Here too—having conceded partisanship explains the 2026 Plan, *see* Opp. 8-9, 20-21—Plaintiffs have not *plausibly* alleged "purposeful, invidious discrimination" given that "obvious alternative explanation" of partisanship. *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009). Plaintiffs do not plausibly show that the 2026 Plan is "more likely explained by" racism than politics. *Id.* at 680. They have not plausibly alleged the 2026 Plan was enacted "'because of'" racial animus. *Id.* at 681; *see* Mot. 6-20.

---

[1] On standing, Plaintiffs acknowledge (at 4) that they cannot seek relief enjoining the use of the entire "May 2026 Map," *contra* Compl. p.57 ¶¶1-2, because they lack standing to pursue "statewide" relief, *Gill v. Whitford*, 585 U.S. 48, 66 (2018).

1

Indeed, this case is easier than *Lee*. There, the obvious alternative of partisanship went unannounced. 746 F. Supp. 3d at 498. For the 2026 Plan, it was explicit. *See* Opp. 8-9, 20-21. According to Plaintiffs, the State's open and obvious political goal was just pretext. Opp. 8 n.2. Lawmakers "had to come up with some reason other than race," they say. *Id.* It is hard to imagine a better example of Plaintiffs' presumption of bad faith in action. *Contra Lee*, 746 F. Supp. 3d at 504; *Abbott v. LULAC*, 146 S. Ct. 418, 419 (2025).

Nor is *Lee* "critical[ly] differen[t]" because of Davidson County's demographics or timing. *Contra* Opp. 8 & n.2. *Lee* did not turn on Davidson County's demographics; *Lee* all but rejected the notion that plaintiffs could state a discrimination claim only in pre-dominantly black regions. 746 F. Supp. 3d at 501. In any event, *Lee* dismissed an inten-tional vote dilution claim not just against Davidson County congressional districts, but also against a Shelby County state senate district. *Id.* at 486. As for timing, there is nothing racially suspect about the State taking the opportunity to redistrict based on politics shortly after *Callais* clarified that the State may redistrict based on politics. Mot. 19; *see Callais*, 146 S. Ct. at 1156. Redistricting after *Callais* does not suggest a racial motivation; it confirms the State's political motivation. *See Lee*, 746 F. Supp. 3d at 504.

**B.** Like *Lee*, Plaintiffs fail to "allege a circumstantial case of racism" with the *Ar-lington Heights* factors. *Id.* at 504.[2] Nothing in *Arlington Heights* relaxes Plaintiffs' pleading

---

[2] Plaintiffs' only allegation of what they call "direct evidence of discriminatory intent" is an NPR interview that mentions improving safety in Memphis. Opp. 20; *see* Mot. 14.

2

obligation to overcome the "obvious alternative explanation" of partisanship. *Iqbal*, 556

U.S. at 682.[3] And nothing in *Arlington Heights* relaxes Plaintiffs' obligation—including at

this stage—to presume good faith. *Lee*, 746 F. Supp. 3d at 493. "[C]onstruing ambiguous

… evidence" against legislators derogates that presumption. *Abbott*, 146 S. Ct. at 419.[4]

 *History*. Plaintiffs acknowledge *Lee* rejected many of the same allegations as insuf-

ficient. Opp. 14. Plaintiffs' new allegations likewise have nothing "to do with redistrict-

ing" and center on a "mix of laws, bills or statements" addressing Memphis schools or

the Shelby County District Attorney's office in *non-racial* terms, and therefore do not plau-

sibly allege racial motivation. *Lee*, 746 F. Supp. 3d at 505. "Why not?" Opp. 15. Because

*ipse dixit* conclusions of racial discrimination are not entitled to the presumption of truth.

*See Lee*, 746 F. Supp. 3d at 505-06; Mot. 15-18. Nor are conclusions of racial discrimination

based on lawmakers' race. Opp. 15 ("the shoe fits"). Every allegation of racism is just as

well explained by a political or policy disagreement. *Cf. White v. Regester*, 412 U.S. 755,

Plaintiffs insist that the desire to make Memphis safer is "obviously racist." Opp. 1. That's
a textbook example of presuming bad faith. Mot. 14.

 [3] Plaintiffs' "visual and statistical" allegations just as well describe a partisan gerry-
mander. Opp. 12. Given the conceded correlation between race and politics, *see*
Compl. ¶36, these observations about districts' resulting racial demographics are just the
predictable "side effect," *Alexander v. S.C. State Conf. of the NAACP*, 602 U.S. 1, 20 (2024),
of a politically motivated desire "'to redistrict another Republican seat in Memphis,'"
Compl. ¶48.

 [4] The presumption applies to every allegation of racial animus. *See, e.g.*, *Alexander*, 602
U.S. at 10, 20; *Abbott v. Perez*, 585 U.S. 579, 610 (2018); *Lee*, 746 F. Supp. 3d at 504; *Christian
Ministerial Alliance v. Jester*, 786 F. Supp. 3d 1134, 1142-49 (E.D. Ark. 2025) (three-judge
court); *Williams v. Hall*, 810 F. Supp. 3d 637, 672 (M.D.N.C. 2025) (three-judge court).
Correctly applied, the presumption defeats Plaintiffs' bald allegations. Mot. 15.

3

766-67 (1973) (detailing *intra-party* racial discrimination within Democratic party primaries). The Court should reject Plaintiffs' attempt to reduce Tennesseans to "'competing racial factions.'" *Allen v. Milligan*, 599 U.S. 1, 86 (2023) (Thomas, J., dissenting).

*Timing*. Plaintiffs fault the Legislature for redistricting quickly after *Callais* and before the midterms. Opp. 17. They say the Legislature "misread[] *Callais*." *Id*. But it is no misread to say *Callais* removed widespread uncertainty about whether the State could pursue its political objective of a 9-0 map. 146 S. Ct. at 1142, 1156. That the Legislature redistricted after that clarification to advance that political objective is "obvious," *Lee*, 746 F. Supp. 3d at 506, not "dubious," *contra* Opp. 17. And "the legislature had a good reason" to act quickly given the looming midterms. *Lee*, 746 F. Supp. 3d at 504. Insisting that the Legislature subordinate its plainly stated political goal (a "9-0" map, Compl. ¶84) for a racial one has a name: unconstitutional racial gerrymandering. *Alexander*, 602 U.S. at 6-8.

**C.** Plaintiffs fail to "show that the State's districting plan 'has the purpose *and* effect' of diluting the minority vote." *Alexander*, 602 U.S. at 39. Plaintiffs argue they have shown discriminatory effect by alleging "'less opportunity'" now than they had before. Opp. 11. *Callais* explains a showing of "less opportunity" is not so rudimentary. 146 S. Ct. at 1154-57; Mot. 20-21. Plaintiffs must first account for "the State's combination of permissible criteria." *Callais*, 146 S. Ct. at 1155. *Callais* required that of a §2 plaintiff to better conform to the Constitution. *Id.* at 1155-56. And *Milligan* faulted the district court

for not heeding *Callais* for "both" §2 claims and—the origin of §2, Mot. 19—a claim of unconstitutional vote dilution. *Allen v. Milligan*, 146 S. Ct. 1377, 1381 (2026).[5]

**II.     Plaintiffs' First Amendment Claim Is Neither Justiciable Nor Plausible.**

**A.** Plaintiffs' First Amendment retaliation theory is nonjusticiable after *Rucho*. *See* Mot. 21-24. *Rucho* did not say "the decision to initiate redistricting was itself non-retaliatory." *Contra* Opp. 21. *Rucho* said such theories would render "any level of partisanship in districting" problematic, even though redistricting is root and branch a political exercise. *Rucho*, 588 U.S. at 714. Plaintiffs' claim "simply describes the act of districting for partisan advantage." *Id.* It is "beyond the competence of the federal courts." *Id*. at 707.

**B.** Even if justiciable, redistricting for partisan advantage is not First Amendment retaliation. *Contra* Opp. 21. The State's Republican majority redistricted to benefit Republicans, Compl. ¶¶48, 63, and Plaintiffs' contrary allegations of retaliatory motive are baseless conjecture, Mot. 24. Plaintiffs' allegations of harm are likewise insufficient, for the 2026 Plan does not restrict "speech, association, or any other First Amendment activities." *Rucho*, 588 U.S. at 713-14; Mot. 24-25; *compare Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 198 (2024) (coercing insurance companies to deny coverage to NRA). Plaintiffs have not plausibly alleged retaliation.

---

[5] Plaintiffs erroneously contend *Lee* rejected this "exact" argument. Opp. 11. *Lee* equivocated about whether an intentional vote-dilution plaintiff must satisfy the first *Gingles* precondition—namely, showing a reasonably configured majority-minority district would have been possible. *Lee*, 746 F. Supp. 3d at 500-01.

Dated: July 17, 2026

Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter

/s/ *Zachary L. Barker*
ZACHARY L. BARKER (BRP #035933)
*Senior Assistant Attorney General*

ANDREW DENNING (BPR #042208)
*Assistant Attorney General*
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, Tennessee 37202-0207
Phone: (615) 532-7400
Zachary.barker@ag.tn.gov
Andrew.denning@ag.tn.gov
(615) 532-4098

TAYLOR A.R. MEEHAN (admitted PHV)
BRYAN K. WEIR (admitted PHV)
THOMAS A. WILSON (admitted PHV)
SOREN GEIGER (admitted PHV)
Consovoy McCarthy PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
taylor@consovoymccarthy.com
bryan@consovoymccarthy.com
twilson@consovoymccarthy.com
soren@consovoymccarthy.com

*Counsel for State Defendants*

6

**CERTIFICATE OF SERVICE**

I certify that the foregoing brief was filed electronically on July 17, 2026. A true

and correct copy of that filing was forwarded via the Court's CM/ECF system and/or U.S.

Mail postage prepaid upon the following:

Lucas Cameron-Vaughn
ACLU Foundation of Tennessee
P.O. Box 120160
Nashville, TN 37212
(615) 320-7142
Email: lucas@aclu-tn.org

*/s/ Zachary L. Barker*
ZACHARY L. BARKER
Senior Assistant Attorney General

7