**RECOMMENDED FOR FULL-TEXT PUBLICATION**

Case No. 3:26-cv-00616

**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE NASHVILLE DIVISION**

| | | |
|---|---|---|
| AMBER SHERMAN, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | ORDER AND OPINION |
| v. | ) | |
| | ) | |
| TRE HARGETT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**BEFORE: NALBANDIAN, Circuit Judge, CAMPBELL, Chief District Judge, and STIVERS, District Judge.**

**PER CURIAM.** In July, we rejected an attempt to prevent Tennessee from using its new congressional maps in its upcoming elections. There, Black Memphians argued that Tennessee's legislature drew the maps to dilute the votes of Black people. But because they lacked evidence of a discriminatory purpose, we explained that they were unlikely to succeed on the merits, and we denied their preliminary injunction.

Now, Defendants move to dismiss the lawsuit under Rule 12. For essentially the same reasons that we thought that Plaintiffs were not likely to succeed on the merits of their preliminary injunction, we grant Defendants' motion to dismiss.

In May, 2026, the Tennessee General Assembly convened an Extraordinary Session to redraw the state's district maps. The stated purpose of the redistricting was to create another Republican seat in Tennessee. At the end of the three-day Extraordinary Session, the Tennessee General Assembly adopted a new congressional map. Under the old map, which was drawn in the

wake of the 2020 census, Congressional District 9 was essentially encompassed the city of Memphis and Shelby County. But the new map split Memphis and Shelby County across three districts. The map's sponsors said that the new map would allow Tennessee to send a 9-0 Republican delegation to Congress. A few days after the legislature adopted the new map, Plaintiffs brought this lawsuit, alleging that the legislature's action was motived by race.

Under Rule 12, we dismiss a complaint when its "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), or when "an obvious alternative explanation" would establish no wrongdoing, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007). The presumption of legislative good faith applies at the pleading stage. *Tennessee State Conf. of NAACP v. Lee*, 746 F. Supp. 3d 473, 494 (M.D. Tenn. 2024) (per curiam); *see Alexander v. S.C. State Conf. of the NAACP*, 602 U.S. 1, 10 (2024). So "when a complaint makes clear that race and politics are highly correlated, it must allege facts that plausibly disentangle race from politics." *Lee*, 746 F. Supp. 3d at 494 (citation modified).

Plaintiffs' allegations don't clear these hurdles. The complaint nominally alleges the existence of direct evidence without telling us what that evidence might be. *cf. Cooper v. Harris*, 581 U.S. 285, 318 (2017). And their references to attenuated, circumstantial evidence, taken as true, only present a "mere possibility of misconduct," *Iqbal*, 556 U.S. at 679. What's more, the alleged facts point to the "obvious alternative explanation," *Twombly*, 550 U.S. at 567, that the legislature drew the map for a political purpose: here, an "all-Republican delegation." R.1 at PageID 33. And at bottom, Plaintiffs do not allege that the legislature could have accomplished that purpose without breaking up Memphis. *See Louisiana v. Callais*, 146 S. Ct. 1131, 1157 (2026); *Alexander*, 602 U.S. at 38–39 (2024). So they fail to satisfy the plausibility test.

Primarily, Plaintiffs fail to state a vote-dilution claim.[1] Consider their arguments. First, they contend that "the shape of the district lines at issue may demonstrate in themselves a clear pattern . . . to disadvantage one racial group." R.58, PageID 852 (citation modified). But as we just explained, when a map's effects are "readily explainable on grounds apart from race . . . disproportionate impact alone cannot be decisive." *City of Mobile v. Bolden*, 446 U.S. 55, 70 (1980). And here, political motivations explain the map's effects. *See Lee*, 746 F.Supp.3d at 504 ("[T]he Complaint must do more than plausibly allege that Tennessee's legislators knew that their Republican-friendly map would harm voters who preferred Democratic candidates—including the higher percentage of minority voters who preferred those candidates.").

Second, Plaintiffs stress that they don't need to "establish widespread racial hatred, or . . . show that partisan motivations were a sham or a pretext" to prevail—just that "racial discrimination . . . was one of [the legislature's] motivating factors" in passing the map. R.58 at PageID 854. Fair enough, but Plaintiffs haven't met that standard. Because when we evaluate whether the legislature was racially motivated, we apply the presumption of good faith. *Lee*, 746 F.Supp.3d at 504. But their allegations of discriminatory purpose—which center on isolated comments by legislators and nebulous references to Tennessee's racial history—don't rebut that presumption. As we explained, that evidence might be "consistent with Plaintiffs' story," but it's not evidence of racial animus where the legislature's political motivations provide the obvious

[1] While we take issue with the sufficiency of Plaintiffs' allegations, we disagree with Defendants' argument that Plaintiffs lack standing. As we explained in our preliminary injunction ruling, *Sherman v. Hargett*, No. 3:26-cv-00616 (M.D. Tenn. July 23, 2026), Plaintiffs aren't asserting a statewide theory of harm based on districts they don't reside in. *Cf. Gill v. Whitford*, 585 U.S. 48, 66 (2018). They're challenging the cracking of Memphis into three districts. That supplies standing for a vote-dilution claim.

alternative explanation.[2] R.62, PageID 1012. Besides, "what motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it . . . ." *United States v. O'Brien*, 391 U.S. 367, 384 (1968) (citation modified); *see also Edwards v. Aguillard*, 482 U.S. 578, 638 (1987) (Scalia, J., dissenting) ("[T]his Court has recognized from Chief Justice Marshall to Chief Justice Warren that determining the subjective intent of legislators is a perilous enterprise.") (citation modified). So on these flimsy allegations, the Complaint fails to plausibly allege that the legislatures enacted the map "in part because of its disproportionate effect on minority voters." *Lee*, 746 F.Supp.3d. at 504.

Third, Plaintiffs point to the "timing and sequence" of the legislature's actions after the Supreme Court's decision in *Louisiana v. Callais*, 146 S. Ct. 1131 (2026). R.58 at PageID 863. But again, Plaintiffs run headlong into an obvious political explanation and the presumption of legislative good faith. As we explained, "the short gap between [that] decision and Tennessee's primary elections appeared to give the state a brief window to pass a map that favored Republicans." R.62 at PageID 1013.

And fourth, Plaintiffs point to the new map's discriminatory effects. R.58 at PageID 857–59. But vote-dilution plaintiffs must show both discriminatory purpose *and* effects. *Lee*, 746 F. Supp. 3d at 499. And we see little reason to consider Plaintiffs' effects allegations in isolation where they haven't shown discriminatory purpose.

---

[2] Plaintiffs admonish us to consider evidence "cumulatively" rather than "in a vacuum." R.58 at PageID 856 (citation modified). We take Plaintiffs' point about the *Arlington Heights* analysis, but it doesn't move the needle. Plaintiffs haven't provided a *category* of evidence that defeats the obvious political explanation for the new map. So merely stacking evidence of the same type—and subject to the same vulnerability—doesn't cut it.

Separately, Plaintiffs' First Amendment claim fails on its face. As we explained in our preliminary injunction ruling, *Sherman v. Hargett*, No. 3:26-cv-00616 (M.D. Tenn. July 23, 2026), we lack jurisdiction over this claim because it implicates a non-justiciable political question: "[H]ow much partisan dominance is too much[?]" *See Rucho v. Common Cause*, 588 U.S. 684, 704 (2019).

So for these reasons we GRANT Defendants' motion to dismiss. Specifically, because Plaintiffs fail to plausibly allege the legislature's discriminatory purpose, we dismiss Count 1 WITH PREJUDICE for failure to state a claim. And because their First Amendment claim implicates a nonjusticiable political question, we dismiss Count 2 WITHOUT PREJUDICE for want of jurisdiction.